## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 23-CR-148-JFH** |
| | **S.D. Tex. Case No. 23-MJ-1208** |
| **LEE FINCH, JR.,** | |
| **Defendant.** | |

### <u>OPINION AND ORDER</u>

Before the Court are an appeal of bail determination and motion to detain ("Appeal") filed by the United States of America ("Government"). Dkt. No. 7; Dkt. No. 8. The Government seeks revocation of an order entered by United States Magistrate Judge Christina Bryan of the Southern District of Texas setting conditions of release for Defendant Lee Finch Jr. ("Defendant"). *Id.* Defendant opposes the Appeal. Dkt. No. 23. The Court held a hearing on the Appeal on July 5, 2023. For the reasons stated, the Appeal is GRANTED.

### BACKGROUND

Defendant is charged with one count of coercion and enticement of a minor. Dkt. No. 2. The indictment sets out a timeframe of February to April 2018 and names K.H. as the alleged victim. *Id.* According to the Government's Appeal, interactions between Defendant and K.H. began two to three years earlier. Dkt. No. 7 at 2. Defendant allegedly sexually abused K.H., who was twelve (12) years old at the time, repeatedly at his home in Broken Arrow, Oklahoma. Defendant later moved to Texas, but he traveled back to Oklahoma to visit K.H. and have sexual intercourse with her. *Id.* Defendant was eventually charged and convicted in Oklahoma state court of using a computer to violate Oklahoma statutes, for which he was sentenced to probation. The terms of Defendant's probation required him to have no contact with K.H. The Government

asserted in its Appeal that Defendant continued to contact and have sexual intercourse with K.H. after his conviction and the no-contact order.

Defendant was initially arrested in the Southern District of Texas. Dkt. No. 6. The Texas court conducted a detention hearing where the Government called one witness: a law enforcement agent who had arrested Defendant in Texas but had not otherwise been involved in the case. Dkt. No. 11-1 at 7. The agent's testimony was based on review of reports prepared by other agents and was internally inconsistent and contradictory. *See* Dkt. No. 12. At the conclusion of the Texas hearing, the magistrate judge found there was no evidence of contact between Defendant and K.H. after his state court conviction except for a non-sexual picture and "a line in the report where some law enforcement officer somewhere said that the minor victim reported having contact with him." Dkt. No. 11-1 at 58. The magistrate judge did not "remember any report of [post-conviction] sexual relations." *Id.* She ordered Defendant to be released, the Government announced its intention to appeal in this Court, and this Appeal followed.

The Court held a hearing on the Appeal on July 5, 2023. The Government called K.H. as a witness and submitted twelve (12) exhibits, including various text messages between Defendant and K.H. and documents from Defendant's state court case. K.H. testified that she met Defendant through his step-daughter when she was twelve (12) years old and that she resided with Defendant's family in Tulsa County, Oklahoma, when she was thirteen (13) years old due to turmoil in her own family. She reported Defendant inappropriately touched her, caused her to touch his erect penis, and "made out" with her in the Tulsa County residence, but testified there was no sexual intercourse between them at that time. K.H. was born in 2003, so these events would have occurred in approximately 2015 and 2016.

In September 2016, Defendant and his family moved to Houston, Texas.  K.H. testified that Defendant traveled to Oklahoma to visit her and that they first had sexual intercourse when she was thirteen (13) years old.  In June 2017, K.H. moved to Texas to live with Defendant and his family, where the two had what she described as "full blown sexual intercourse" on a regular basis.  In February 2018, K.H. moved back to Oklahoma.  She and Defendant continued to communicate through their cell phones, both calling and messaging, and Defendant made trips to Tulsa to visit her, during which they had sexual intercourse.

Police first began to investigate Defendant in 2018.  At that time, K.H. denied the existence of a sexual relationship between herself and Defendant.  She testified that Defendant was arrested and released on bond during this time frame, and that while he was out on bail, Defendant told her there was a no-contact order prohibiting him from speaking with her.  Despite the no-contact order, K.H. testified that the two continued to communicate through Snapchat and other apps.  She also stated during the hearing that Defendant told her to deny the sexual relationship and to say the messages were "fantasy."  Defendant additionally told K.H. that if he ever went to jail, he would kill himself.  After these conversations, K.H. continued to deny the sexual relationship during the state court proceedings.  She testified that she now regrets lying for Defendant but that, at the time, she loved him, believed he loved her too, and did not want to see him in prison.

Defendant pled guilty in the Oklahoma state court case in 2020 and received probation. K.H. testified that after he pled guilty, he continued to contact her.  Defendant told K.H. that there was a court order that prohibited him from contacting her, but they communicated through Instagram and Snapchat and met in person in August 2020.  During this encounter, Defendant picked up K.H. and drove her to an apartment, where they parked and talked in his vehicle.  K.H. told Defendant that she did not want to have sex and just wanted to talk, but he was "drunk and

buzzed" and "was pouting" that K.H. was not interested in sex.  Eventually, both of them moved to the backseat, where they had sexual intercourse for approximately a minute before a car drove by and interrupted them with its headlights.  K.H. told Defendant she was "done" and he took her home.  After this encounter, K.H. and Defendant continued to communicate by cell phone, but less frequently.  In April 2021, K.H. made a new police report about Defendant.  This federal case followed.

Most of the text messages submitted as evidence by the Government are dated in 2018.  However, one compilation exhibit included messages from 2020 according to K.H.  She also testified that she made a habit of deleting messages between herself and Defendant after their relationship was first discovered in 2018.  The text messages submitted as exhibits include repeated conversations where Defendant and K.H. made plans to meet or expressed desire to meet and graphic discussions of both past and future sexual acts between them.  *See generally* Hrg. Exs. 1-9.  As one example, Defendant and K.H. exchanged text messages in March 2018 when K.H. was fourteen (14) years old, where they discussed the possibility of a threesome and Defendant explicitly commented on K.H.'s age:

> K.H.:  I just feel like whoever u fuck they gon get attached and I don't wanna have to cut nobody bc I don't like sharing and especially you so if we did you couldn't give her all of you bc if she tries some slick shit that'll be the day.
>
> K.H.:  Like they'd have to be more interested in me than u
>
> Defendant:  But no matter what, I got you… and I choose you.
>
> K.H.:  At first I was like nahhhh he ain't fuckin nobody else but thennnn I was like, well it's not like he'd continue to fuck her and plus it'd make us more exciting.  Like I want to keep you entertained so that you don't have to go out looking for entertainment by yourself.. ya kno?
>
> K.H.:  Idk

Defendant:  Omg.. who are you..

Defendant:  Your so much older than your age

Defendant:  And you get it..

K.H.:  I just need you to stay satisfied with me.

Hrg. Ex. 5 at 2.

The Government also submitted as exhibits the judgment and commitment from Defendant's Oklahoma state court case and the terms of his probation establishing that he was to have no contact with K.H.  Hrg. Ex. 11; Hrg. Ex. 12.  Each document has a no-contact provision: "Defendant is ordered to have no contact with victim K.H." [Hrg. Ex. 11] and "Defendant is not to have any contact with the victim or any minor child as a condition of the Defendant[']s bond" [Hrg. Ex. 12].

## AUTHORITY AND ANALYSIS

"If a person is ordered released by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense . . . the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release."  18 U.S.C. § 3145(a)(1).  The Tenth Circuit requires this Court to conduct de novo review of a magistrate judge's detention order.  *United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003).  The Court may receive additional evidence as part of its review.  *See* 28 U.S.C. § 636(b)(1).  The Federal Rules of Evidence do not apply to detention matters.  18 U.S.C. § 3142(f); Fed. R. Evid. 1101(d)(3).

Pursuant to 18 U.S.C. § 3142(f), the Court must consider whether there are conditions or a combination of conditions that will assure the appearance of Defendant and protect the safety of any other person or the community.  Specifically, the Government "must prove risk of flight by a preponderance of the evidence and it must prove dangerousness to any other person or to the

community by clear and convincing evidence." *Cisneros*, 328 F.3d at 616 (citations omitted). Section 3142 sets out four factors for the Court to consider:  (1) the nature and circumstances of the charged offense; (2) the weight of the evidence; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger that would be posed by the defendant's release. *Id.* § 3142(g).  "[A]pplying and weighing the relative importance of the statutory factors requires an individualized determination that necessarily differs for each defendant depending on the circumstances of the case." *United States v. Bragg*, 2021 WL 6143720, at *2 (10th Cir. Dec. 30, 2021).[1]

The Court conducted its de novo review based on the July 5, 2023 hearing record, the parties' briefing, the transcript of the Texas detention hearing, and the pretrial services report prepared by the U.S. Probation Office for the Southern District of Texas and amended by the U.S. Probation Office for the Northern District of Oklahoma.

The Court begins by noting that Defendant is charged with a crime for which there is a presumption of detention.  Specifically, Defendant is charged with coercion and enticement of a minor in violation of 18 U.S.C. § 2422(b).  The pretrial detention statute states that a rebuttable presumption arises "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community" if the Court finds there is probable cause to believe that the person committed an offense involving a minor victim under any of a list of statutes, including § 2422.  18 U.S.C. § 3142(e)(3)(E).  Here, Defendant has been charged by indictment after presentation of evidence to the grand jury.  *See* Dkt. No. 2.  This is sufficient for the Court to find that probable cause exists and the presumption applies.

---

[1]  Unpublished appellate opinions are not binding precedent but may be cited for their persuasive value.  *See* Fed. R. App. P. 32.1.

"Once the presumption is invoked, the burden of production shifts to the defendant. However, the burden of persuasion regarding risk-of-flight and danger to the community always remains with the government."  *United States v. Stricklin*, 932 F.2d 1353, 1354-55 (10th Cir. 1991).  "The defendant's burden of production is not heavy, but some evidence must be produced," and "[e]ven if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain."  *Id.* at 1355.  Here, Defendant did not produce any evidence at the July 5, 2023 hearing.  His sealed response to the Government's Appeal invokes the pretrial services report, which recommended release on conditions and indicated that Defendant has not failed to appear at any previous court appearances. The Court does not consider the pretrial services report by itself to be sufficient evidence to rebut the presumption of detention, as it is the Court's understanding that the report was prepared without awareness of or information regarding the 2020 and 2021 contact between Defendant and K.H. Nevertheless, even if the Court did find Defendant rebutted the presumption, the Government has shown by clear and convincing evidence that Defendant would be a danger to the community if released.

"The concern about safety is to be given a broader construction than the mere danger of physical violence. Safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community."  *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989).  The Court finds K.H. to be an extremely credible witness.  During the hearing, she described Defendant repeatedly knowingly engaging in prohibited behaviors:  first the sexual relationship he allegedly coerced and enticed her into when she was a minor, then the continuation of this relationship despite the rules and conditions of his Oklahoma state court conviction.  K.H.'s testimony that Defendant told her about the no-contact orders entered in the

Oklahoma case both pretrial and post-conviction and still perpetuated their relationship gives the Court great concern that Defendant would defy any condition or combination of conditions imposed in this case as well.

The four statutory factors support the Court's conclusion. The nature and circumstances of the charged offense—coercion and enticement of a minor—involve grooming a child. The Tenth Circuit has defined grooming as "deliberate actions taken by a defendant to expose a child to sexual material; the ultimate goal of grooming is the formation of an emotional connection with the child and a reduction of the child's inhibitions in order to prepare the child for sexual activity." *United States v. Isabella*, 918 F.3d 816, 833 (10th Cir. 2019). The psychological manipulation involved in this charged offense gives the Court further concern regarding community safety. The weight of the evidence is strong, with numerous graphic explicit sexual text messages between Defendant and K.H. and K.H.'s credible testimony. While Defendant's history and characteristics do not include a long criminal history and do include gainful employment, his related Oklahoma state court conviction and behavior toward K.H. following his conviction are inescapably determinative. Finally, the nature and seriousness of the danger that would be posed by release are significant. With Defendant's track record of defying no-contact orders regarding K.H., the Court has no confidence that Defendant would observe the broader no-contact requirements regularly imposed in sex offense cases relating to children and community members.

## CONCLUSION

IT IS THEREFORE ORDERED that the Government's objection of bail determination [Dkt. No. 7] and motion for detention [Dkt. No. 8] are GRANTED.

IT IS FURTHER ORDERED that that Defendant shall be detained pending trial. Defendant is committed to the custody of the Attorney General or a designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or

serving sentences or held in custody pending appeal.  Defendant must be afforded a reasonable opportunity to consult privately with defense counsel.  On order of the United States Court or on request of an attorney for the Government, the person in charge of the corrections facility must deliver Defendant to the United States Marshal for a court appearance.

Dated this 14th day of July 2023.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE